The Hon. Brian A. Tsuchida

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  MJ19-280 |
| Plaintiff, | COMPLAINT for VIOLATION |
| v. | 18 U.S.C. § 111 |
| ANTHONY POMONIS, | |
| Defendant. | |

BEFORE Chief United States Magistrate Judge Brian A. Tsuchida, Seattle, Washington.

The undersigned complainant being duly sworn states:

### Count One

### Assault on a Federal Officer

On or about June 8, 2019, on a vessel in United States waters near Point Roberts, Washington, within the Western District of Washington, and elsewhere, the defendant, ANTHONY POMONIS, did forcibly, knowingly, and intentionally assault United States Customs and Border Protection Marine Interdiction Agent Shane Madsen, an officer and employee of the United States, while Madsen was engaged in, and on account of,

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Madsen's official duties.  It is further alleged that the defendant, ANTHONY POMONIS,
2    made physical contact with Madsen during the assault.
3         All in violation of Title 18, United States Code, Section 111(a)(1).
4
5    **I, Rurik Pitstick, being first duly sworn on oath, do hereby depose and say:**
6                                    **INTRODUCTION**
7         1.    I am employed as a Special Agent with the U.S. Department of Homeland
8    Security, Homeland Security Investigations (HSI), assigned to the Assistant Special
9    Agent in Charge (ASAC) Blaine, Washington, field office.  I have been assigned to the
10   Blaine Homeland Security Investigations Office since December 2006.  I have a
11   Bachelor's Degree in Psychology from Carroll College and a Master's Degree in
12   Criminal Justice from Washington State University. I am also a graduate of the Spokane
13   Training Center's Basic Law Enforcement Academy and the Spokane Police
14   Department's Post Academy program. I served for an additional five months as a Patrol
15   Officer for the Spokane Police Department conducting criminal investigations, writing
16   search warrants, serving arrest warrants, and general police work.  This included
17   investigations of criminal offenses including, but not limited to, assault, narcotics,
18   identity theft, DUI, theft, and domestic violence.
19        2.    In my capacity as a Special Agent, I am responsible for conducting
20   investigations into the numerous federal laws enforced by HSI.  Since 2018, I have
21   investigated violations relating to commercial fraud and Intellectual Property Rights
22   (IPR).  Since 2010, I have served as a Defensive Tactics instructor, with specialized
23   training in control tactics.  I am a graduate of the Federal Law Enforcement Training
24   Center (FLETC), HSI Special Agent Training Program, and have received further
25   specialized training in narcotics, investigating child pornography and child exploitation
26   crimes, and investigating IPR violations.  My training included courses in law
27   enforcement techniques, federal criminal statutes, conducting criminal investigations, and
28   the execution of search warrants.

COMPLAINT/A. POMONIS - 2
USAO 2019R00558

eecc

3.     I have written affidavits in support of court-authorized federal warrants and orders in the Western District of Washington for searching property.  Additionally, I have testified in grand jury proceedings, written investigative reports, and conducted and participated in numerous interviews of criminal suspects.

4.     Information contained in this affidavit is based upon knowledge I gained from my investigation, my training and experience, and investigations and experience by other agents, inspectors and officers. This complaint is submitted to establish probable cause for the arrest of ANTHONY POMONIS for assaulting, resisting, or impeding certain officers or employees in violation of 18 U.S.C. § 111.  Given that limited purpose, this complaint does not contain all of the facts known to me regarding this investigation.  This affidavit is intended to show merely that there is a sufficient factual basis for a fair determination of probable cause to support the Complaint.  All times listed herein are approximate.

## INVESTIGATION

5.     This investigation is being conducted by HSI.  On June 8, 2019, U.S. Customs and Border Protection's (CBP) Office of Air and Marine (OAM) was conducting a joint operation with the Coast Guard.  At approximately 6:45 pm, CBP vessel M900 contacted the vessel "Double D" (a vessel with British Columbia registration number BC 1543271) pursuant to 19 U.S.C. § 1581 in order to conduct a document check and determine if the vessel had crossed the United States' border with Canada.  When the vessels made contact, they were approximately a mile off the coast of Point Roberts, in U.S. waters, at coordinates 48 58.5N, 122 59.5W, and within the Western District of Washington.

6.     Upon contact with the "Double D", Marine Interdiction Agents (MIA) Greg Blakley and Shane Madsen asked the vessel's occupants about the vessel's course of travel.  The occupants stated that they were going from North Pender Island in British Columbia, Canada (BC), to Crescent Beach Marina in Surrey, BC.  The vessel crossed into U.S. waters to complete the journey.  MIAs Blakley and Madsen boarded the

COMPLAINT/A. POMONIS - 3
USAO 2019R00558

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   "Double D" and obtained identification documents from the vessel's three occupants.
2   The three occupants were: Anthony POMONIS (11/17/1973), Stewart JUDD
3   (09/25/1980), and Dean BAULCOMB (03/09/1969). From the M900 vessel, MIA Bates
4   contacted the command center for the operation to run the occupants' information
5   through law enforcement databases. The command center notified MIA Bates that
6   POMONIS had an active, fully confirmed, extraditable warrant. MIA Bates non-verbally
7   signaled to MIAs Blakley and Madsen that the subjects were to be detained.
8        7.      MIA Madsen placed his hand on his duty weapon in its holster and ordered
9   all the subjects to put their hands up. POMONIS and the other boat occupants initially
10  complied with the command. MIA Bates maneuvered the M900 vessel alongside the
11  "Double D" and notified POMONIS that he was under arrest for the warrant. MIA
12  Blakley began to give commands to place POMONIS in a cuffing position. POMONIS
13  at first appeared to comply with MIA Blakley's commands, but then suddenly lunged at
14  MIA Blakley. MIA Blakley believed POMONIS was attempting to tackle him, and side-
15  stepped and redirected POMONIS towards the back of the boat.
16       8.      MIA Madsen was standing at the back of the boat as POMONIS charged
17  toward him. POMONIS wrapped his arms around MIA Madsen and drove MIA Madsen
18  further towards the back of the boat. As he was being pushed, MIA Madsen drew out his
19  duty weapon; due to POMONIS's proximity, the weapon was in POMONIS's face during
20  the assault. The MIAs believed that lethal force was imminent based on the severity of
21  POMONIS's actions and the close quarters they were forced to struggle in. POMONIS
22  continued pushing MIA Madsen, whose legs came in contact with the swim step door.
23  MIA Madsen fell over the swim step door onto the swim step. MIA Madsen's legs were
24  caught on the swim-step door, which kept MIA Madsen from going into the water.
25       9.      MIA Blakley wrapped his arm around POMONIS's head and chin and
26  pulled him back over the swim step door on to the main deck. MIA Madsen then placed
27  POMONIS into handcuffs.
28

COMPLAINT/A. POMONIS - 4
USAO 2019R00558

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

10.     The vessel and occupants were taken to the Coast Guard station in Bellingham, WA. The Whatcom County Sheriff's Office (WCSO) was contacted to assist. MIA Madsen and MIA Blakely had numerous scrapes and bruises.

11.     WCSO Deputy Nyhus interviewed POMONIS and advised him of his constitutional rights, which POMONIS waived. POMONIS stated he could not explain his actions. POMONIS stated he had a "fight or flight moment, and that he "kind of blacked out." POMONIS further stated that he had had a "moment of insanity" and that he was "full of adrenaline." POMONIS had small lacerations on his lip, head, and face.

12.     WCSO Deputy Nyhus spoke with BAULCOMB, who stated that POMONIS had "charged forward and had put his shoulder into it."

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

COMPLAINT/A. POMONIS - 5
USAO 2019R00558

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CONCLUSION**

13.    Based on the above facts, I respectfully submit that there is probable cause to believe that:

a.    ANTHONY POMONIS forcibly assaulted, resisted, opposed, impeded, intimidated, and/or interfered with a federal officer in the performance of official duties in violation of Title 18, United States Code, Section 111(a)(1).


RURIK PITSTICK, Complainant
HSI SPECIAL AGENT


The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing Complaint and Affidavit via telephone on the 26th day of June, 2019.  Based on the Complaint and Affidavit, the Court hereby finds that there is probable cause to believe the defendant committed the offense set forth in the Complaint.


DATED this 26th day of June, 2019.


BRIAN A. TSUCHIDA
Chief United States Magistrate Judge


COMPLAINT/A. POMONIS - 6
USAO 2019R00558

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970